The JS 44 civil coversheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
John Telliho

## DEFENDANTS
East Windsor Township & American Traffic Solutions

**(b)** County of Residence of First Listed Plaintiff: **Ocean**
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: **Mercer**
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, Telephone Number, and Email Address)*
Shabel & DeNittis, 525 Route 73 North, Suite 302
Marlton, NJ 08053

Attorneys *(If Known)*
unknown

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Mgmt. Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Med. Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☒ 440 Other Civil Rights | ☐ 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee (Prisoner Petition) | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district *(specify)*
- ☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. Section 1983
Brief description of cause:
Due process violation

## VII. REQUESTED IN COMPLAINT:
☒ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
**DEMAND $**
CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE
DOCKET NUMBER

DATE: 7/31/12
SIGNATURE OF ATTORNEY OF RECORD: *[signature]*

**FOR OFFICE USE ONLY**
RECEIPT #_____ AMOUNT_____ APPLYING IFP_____ JUDGE_____ MAG. JUDGE_____

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN TELLIHO, on behalf of himself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>EAST WINDSOR TOWNSHIP and AMERICAN TRAFFIC SOLUTIONS,<br><br>Defendants. | UNITED STATES DISTRICT COURT<br>DISTRICT OF NEW JERSEY<br>TRENTON VISAGE<br><br>CIVIL ACTION NO.:<br><br>**CLASS ACTION COMPLAINT** |

## **INTRODUCTION**

1. This is a class action brought on behalf of a New Jersey class challenging the Defendants' uniform policy of operating two unlawful red light camera monitoring systems in East Windsor Township ("East Windsor"), at a time when Defendants were legally ineligible to operate such a system due to their failure to comply with the mandatory statutory requirements for operating such systems in New Jersey; as well as their issuance of violation notices, and their collection of fines, based the operation of red light camera monitoring system in East Windsor during this period of ineligibility.

2. This action raises claims under 42 U.S.C. § 1983, unjust enrichment and the New Jersey Civil Rights Act, N.J.S.A. 10:6-1 et seq.

3. This action also seeks injunctive and declaratory relief, including an order establishing a court-supervised program to carry out an audit and refunds to class members victimized by this uniform policy.

1

## THE PARTIES

4. Plaintiff John Telliho resides in Jackson, New Jersey. Like all other class members, he was issued a violation notice by Defendants during the class period based on Defendants' operation of a red light camera system in East Windsor and he paid an $85 fine to Defendants based on that violation notice during the class period.

5. Defendant East Windsor Township is a municipality organized under the laws and constitution of the State of New Jersey.

6. Defendant American Traffic Solutions ("ATS") is a Kansas corporation with its primary place of business located at 7681 East Gray Road, Scottsdale, Arizona.

7. Each defendant participated jointly and knowingly in all conduct alleged herein, with each defendant having actual notice of facts which would put any person on notice of the unlawful nature of the conduct alleged herein, including the violation of constitutional rights. Despite such knowledge, each defendant continued to engage in such conduct and to knowingly retain the unlawfully obtained proceeds of such conduct.

8. At all times relevant herein, Defendant ATS was acting as a contractor to East Windsor and ATS was acting under color of state law, performing public, governmental and municipal functions, including issuing traffic violation notices to class members. It was therefore acting under color of state law for the purposes of Section 1983.

## THE UNIFORM COURSE OF CONDUCT AND POLICY WHICH GIVES RISE TO THE CLASS CLAIMS

9. On January 13, 2008, the New Jersey Assembly Bill 4314 was signed into law establishing a five-year pilot program authorizing the installation and utilization of traffic control signal monitoring systems (hereafter "red light camera systems") in New Jersey.

10. A red light camera system is an integrated system utilizing a camera, or multiple cameras, and vehicle sensors which work in conjunction with a traffic control signal to produce images of vehicles disregarding a red signal or "running a red light."

11. Only those municipalities which meet the statutory requirements set forth in N.J.S.A. 39:4-8.14 may legally maintain a red light camera system in New Jersey and issue violation notices and collect fines based on evidence collected by such a system..

12. N.J.S.A. 39:4-8.14(a), the statute authorizing this 5 year pilot program, expressly required each municipality wishing to participate in the program to file an application with the New Jersey Department of Transportation ("NJ DOT"), certifying that certain mandatory requirements had already been met, including:

> **"(3) A certification by the municipal engineer that (a) the intersection or intersections in question have a minimum duration of the amber light at the traffic control signal of three seconds if at least 85 percent of the vehicular traffic approaching the signal is traveling at a speed of 25 miles per hour or less; and (b) for each five mile increase in the speed of vehicular traffic referred to in subparagraph (a) of this paragraph above 30 miles per hour this minimum duration of the amber light shall be increased by one-half second;"**

13. In addition, the state statute authorizing the use of red light cameras in participating municipalities <u>mandates</u> that, after a municipality is admitted into the program, each red light camera system in each municipality must be inspected <u>at least six months after installation of the red light camera system, and every six months thereafter</u> by the municipal engineer, who must also submit a report of each such inspection to NJ DOT <u>at least every six months</u>. See N.J.S.A. 39:4-8.14(e):

> **"A traffic control signal monitoring system <u>shall be</u> inspected and certified at least once every six months by the municipal engineer <u>from the date of its installation for the duration</u> of the five-year pilot program prescribed by P.L. 2007, c. 348 (C.39:4-8.12 et seq.)."(emphasis added)**

3

14. The language of N.J.S.A. 39:4-8.14(e) vests no discretion with anyone to waive compliance with this requirement, or to extend the six month period, and instead expressly uses mandatory language--- "**shall be shall be inspected and certified at least once every six months by the municipal engineer from the date of its installation**"--- in setting forth this requirement.

15. In or about 2010, NJ DOT sent a letter to East Windsor conditionally approving East Windsor into the red light camera program. That letter reiterated the mandatory requirements of inspections of the camera system every six months after installation, stating that to continue to remain legally authorized to operate a red light camera system:

> "**the municipal engineer must submit a certified inspection report for each location every six (6) months. Please forward that information to the address below. This information should be sent to NJDOT, RLR Program, P.O. Box 613, Trenton, NJ 08625-0613.**"

16. Indeed, the East Windsor Ordinance authorizing East Windsor to operate red light camera systems also specifically set forth this six month inspection and certification requirement.

17. Defendant East Windsor began participating in the red light camera program on or about September 1, 2011, with red light camera systems operating at the intersection of Route 130 and Dutch Neck Road and at the intersection of Route 130 and Stockton Street.

18. Defendant ATS was retained by East Windsor to install and operate the red light camera systems, including having ATS actually issue violation notices to persons who are allegedly photographed running a red light.

19. In exchange for maintaining and operating the systems, and issuing these notices, Defendant ATS was to be paid a share of the monies collected based on the red light camera violation notices it issued.

20. Despite actual notice of the mandatory requirement that Defendants' right to operate red

4

light camera systems in East Windsor was contingent on East Windsor conducting inspections of those systems every six months, and on East Windsor submitting certifications of such inspections to NJ DOT every six months, Defendants did not comply with the mandatory statutory requirement of N.J.S.A. 39:4-8.14(e) that each municipality "shall" conduct an inspection of each red light camera system at least once every six months starting six months after installation and "shall" submit a report on such inspection at least once every six months.

21. In fact, upon information and belief, East Windsor conducted no inspection of its red light camera systems whatsoever between September 1, 2011 and at least June 19, 2012.

22. East Windsor did not conduct such an inspection six months after installation of its red light camera systems or submits certifications of those inspections to NJ DOT.

23. It is thus beyond dispute that East Windsor was in violation of the mandatory six month inspection and reporting requirements of N.J.S.A. 39:4-8.14(e) for some period prior to June 19, 2012 for its red light camera systems.

24. Indeed, on June 19, 2012, NJ DOT suspended 19 New Jersey townships---including East Windsor Township--- from the pilot red light camera program for failure to conduct the statutorily mandated inspections every six months, and for failure to submit the statutorily mandated certifications from such inspections every six months.

25. The stated reason given by the NJ DOT was its concern that the yellow light interval for red light camera systems in these municipalities may not be timed to meet the statutory requirements for such systems.

26. In the NJ DOT press release announcing these suspensions, NJ DOT stated:

> **"NJDOT follows the legally required engineering and safety standards in the Manual on Uniform Traffic Control Devices, which requires a minimum duration of the yellow light to equal one- tenth of the posted**

5

> speed limit on the approaching road. This is a safety standard designed to provide motorists with sufficient time to respond to the yellow light and prevent collisions.
>
> For example, where the approaching road has a posted speed of 40 miles per hour, the signal must display yellow for a minimum of four seconds. NJ DOT rounds to the nearest whole second, so in stances where the approaching speed limit is 45 miles per hour, the signal displays a yellow light for five seconds."

27. Thus, even NJ DOT has now formally recognized that East Windsor Township's failure to conduct an inspection of its red light camera systems every six months, and to submit a certification to NJ DOT of that inspection every six months, rendered it legally ineligible to operate red light camera systems in New Jersey for the period when these mandatory six month inspections failed to occur.

28. In addition, Defendants have violated other mandatory requirements to operate a red light camera system in New Jersey.

29. Under N.J.S.A. 39:4-8.14(a)(3), each municipality must submit a certification to NJ DOT, averring that each intersection with a red light camera system in that municipality has a yellow light interval that lasts at least 3 seconds if 85% percent of the traffic actually approaching that signal is traveling at a speed of 25 miles per hour or less; and that if 85% of the traffic for the signal actually approaches the intersection at speeds greater than 30 miles per hour, the yellow light period is at least one-half second longer for each five miles an hour over 30 miles per hour.

30. In explaining these yellow light interval requirements, the NJ DOT has issued a set of written guidelines, contained in the "NJDOT Design Manual—Roadway Traffic Signal Design,"

mandating that these yellow light intervals must be rounded up to the nearest whole number, which states at 12-6:

6

> **"The NJDOT rule for calculating the yellow change interval is:**
>
> **One second for every 10 miles per hour (minimum of 3 seconds).**
>
> **For speeds above 30 mph, <u>the yellow time must be rounded upward</u>. (emphasis added)**
>
> | | |
> |---|---|
> | **EXAMPLES:** | **35MPH=4 seconds yellow** |
> | | **45MPH= 5 seconds yellow** |
> | | **55MPH= 6 seconds yellow"** |

31. Upon information and belief, the yellow light interval for Defendants' traffic control signal monitoring systems in East Windsor failed to meet these mandatory minimum standards between September 1, 2011 and at least June 19, 2012.

32. The north and south bound lanes of Route 130 at the red light camera system at the intersection of Dutch Neck Road have a posted speed limit of 45 miles per hour.

33. <u>N.J.S.A</u>. 39:4-8.14(a)(3), however, requires towns to base yellow light interval at red light camera systems, not on the posted speed limit, but rather on the actual speed at which 85% of drivers actually approach the intersection.

34. The actual speed at which drivers on the south and north bound lanes of Route 130 pass through the intersection with Dutch Neck Road is at least 50 miles per hour.

35. However, even accepting the 45 miles per hour posted speed limit on the north and south bound lanes of Route 130 at the Dutch Neck Road intersection as the correct measure for setting the yellow light interval for Defendant's red light camera system, the statute and NJ DOT rules require a yellow light interval of at least 5 seconds.

36. Using the correct measure of 50 miles per hour under <u>N.J.S.A</u>. 39:4-8.14(a)(3), the yellow light interval would need to be even longer to meet the statutory requirement.

7

37. The actual duration of the yellow light camera interval on the north and south bound lanes of Route 130 at the intersection of Dutch Neck Road, however, was less than 5 seconds between September 1, 2011 and June 19, 2012, in violation of the statute.

38. Indeed, the red light camera ticket issued to Plaintiff at this intersection states that the "amber light phase" was only 3 seconds on June 5, 2012.

39. The east and west bound lanes of Dutch Neck Road at the red light camera system have a posted speed limit of 35 miles per hour.

40. N.J.S.A. 39:4-8.14(a)(3), however, requires towns to base yellow light interval at red light camera systems, not on the posted speed limit, but rather on the actual speed at which 85% of drivers actually approach the intersection.

41. The actual speed at which drivers on the east and west bound lanes of Dutch Neck Road pass through the intersection where East Windsor's red light camera system is located is at least 40 miles per hour.

42. However, even accepting the 35 mile per hour posted speed limit on the east and west bound lanes of Dutch Neck Road as the correct measure for setting the yellow light interval for Defendant's red light camera system, the statute and NJ DOT rules would require a yellow light interval of at least 4 seconds.

43. Using the correct measure of 40 miles per hour under N.J.S.A. 39:4-8.14(a)(3), the yellow light interval would need to be even longer to meet the statutory requirement.

44. The actual duration of the yellow light camera interval on the east and west bound lanes of Dutch Neck Road at the red light camera system, however, was less than 4 seconds between September 1, 2011 and June 19, 2012, in violation of the statute.

45. Moreover, upon information and belief, East Windsor did not, in fact, actually conduct

8

the traffic study mandated by N.J.S.A. 39:4-8.14(a)(3) to determine the average speed at which 85% of motorists actually approached the intersections where East Windsor's red light camera systems were to be located.

46. Rather, East Windsor either conducted no study at all or based its study on the posted speed limit and not on a study of the actual speeds at which 85% of drivers actually approach the intersection, as required by the plain language of N.J.S.A. 39:4-8.14(a)(3).

47. Thus, ab initio, East Windsor failed to perform a mandatory, statutory requirement for beginning the operation of a red light camera system in New Jersey and was thus legally ineligible to ever run such a system between September 1, 2011 and June 19, 2012 for that reason alone.

48. Using the appropriate standard, the yellow light intervals at the East Windsor red light camera systems do not, in actuality, comply with the minimum statutory yellow light period requirements mandated by N.J.S.A. 39:4-8.14(a)(3) and the actual yellow light periods for these intersections are shorter than the statutory minimum and were between September 1, 2011 and at least June 19, 2012.

49. Based on the foregoing violations of these mandatory requirements for lawful operation of a red light camera system in New Jersey, Defendants were not legally eligible to operate red light camera systems in East Windsor for at least some period of time between September 1, 2011 and the present.

50. Despite this, Defendants have not refunded any of the $85 fines they collected from tens of thousands of persons who were issued violation notices by Defendants based on East Windsor's red light camera systems during the period when East Windsor was ineligible to operate such systems due its failure to comply with N.J.S.A. 39:4-8.14(a) (3) and (e)'s mandatory requirements and the other requirements outlined herein.

9

51. Indeed, East Windsor is apparently currently attempting to lift the NJ DOT suspension order against it by now conducting an inspection out of time of its red light camera systems, and by trying to retroactively certify its compliance--- again outside the six month time period after installation specifically mandated by the authorizing statute--- with the statutory requirements.

52. N.J.S.A. 39:4-8.14(e), however, very clearly states that to be legally eligible to operate a red light camera system in New Jersey, a municipality has to inspect its systems six months after they are first installed and every six months thereafter; and that the town must submit a certification to NJ DOT as to the results of those inspections every six months.

53. No provision of the statute vests any person or entity with discretion to waive these mandatory eligibility requirements or to extend the six month time periods spelled out in N.J.S.A. 39:4-8.14(e).

54. Nor does any provision of the statute authorize a municipality to retroactively cure a violation of N.J.S.A. 39:4-8.14(e) by conducting a future inspection, beyond the mandatory six month period after installation spelled out in the statute.

55. Thus, regardless of what Defendants do in the future to attempt to comply with N.J.S.A. 39:4-8.14(e), the simple fact is that it is undisputed that East Windsor did not meet the minimum statutory six month inspection and certification requirements for a considerable period of time in the past.

56. Also, upon information and belief, East Windsor is also attempting, now, for the first time, to conduct the statutorily mandated traffic studies to measure the speed at which 85% of drivers actually approach these intersections, a mandatory statutory prerequisite to operating a red light camera system in New Jersey.

57. The plain language of N.J.S.A. 39:4-8.14(a)(3) required that a traffic study of the actual

10

speed at which 85% of drivers actually approach the intersections be done by East Windsor <u>before</u> Defendants began to operate red light camera systems in New Jersey, not ten months after defendants began operating such systems.

58. No provision of the statute grants anyone the discretion to waive that mandatory requirement or to allow such a traffic study to be conducted after the camera systems have already been operating for ten months and have the results applied retroactively.

59. Thus, whatever Defendants do <u>now</u> can only effect their right to operate red light camera systems in the future.

60. Unless they use a time machine, Defendants cannot now change the fact that they were legally ineligible under New Jersey state law to run a red light camera system in East Windsor in the past during that period when they were in violation of <u>N.J.S.A</u>. 39:4-8.14(a)(3) and (e), and thus Defendants were ineligible to issue violation notices and collect fines based on such non-compliant systems during that period in the past.

61. Defendants must therefore refund the fines they illegally collected in the past during that period when they were not statutorily eligible to impose them and expunge the records of the affected drivers for the period when Defendants were not statutorily eligible to issue such violations.

## CLASS ACTION ALLEGATIONS

62. Plaintiff brings this action as a class action pursuant to <u>R</u>. 4:32, on behalf of a class defined as:

11

> **All persons who paid an $85 fine to Defendants for a violation of N.J.S.A. 39:4:81, Failure to Observe Signal, where the violation notice was issued between September 1, 2011 and June 19, 2012, and was based on a red light camera system maintained by Defendants in East Windsor.**

63. Plaintiff also brings this action as a class action pursuant to R. 4:32, on behalf of a sub-class defined as:

> **All persons who paid an $85 fine to Defendants for a violation of N.J.S.A. 39:4:81, Failure to Observe Signal, where the violation notice was issued between September 1, 2011 and June 19, 2012, and was based on a red light camera system maintained by Defendants in East Windsor at the intersection of Route 130 and Dutch Neck Road.**

64. The class and sub-class for whose benefit this action is brought is so numerous that joinder of all members is impracticable.

65. The exact number and identities of the persons who fit within the proposed classes are contained in Defendants' records and can be easily ascertained from those records.

66. Based upon newspaper reports, the number of each exceeds 25,000 persons.

67. The claims in this action arise exclusively from the uniform conduct and municipal policy alleged herein.

68. No violations alleged are a result of any oral communications or individualized interaction between any class member and Defendants.

69. There are common questions of law and fact affecting the rights of the class members, including, inter alia, the following:

   a. Whether, prior to operating its red light camera systems, East Windsor conducted the mandatory traffic study required by N.J.S.A. 39:4-8.14(a)(3) to determine the speed at which 85% of drivers actually approached the subject intersections;

   b. Whether Defendants complied with the requirements of N.J.S.A. 39:4-8.14(e) by conducting an inspection of its red light camera system six months after installation and every six months thereafter, and by submitting a certification for each such inspection

12

    to NJ DOT every six months during the class period, all as required by N.J.S.A. 39:4-8.14(e);

  c. Whether Defendants' failure to comply with the mandatory six month inspection and certification requirements of N.J.S.A. 39:4-8.14 (e) rendered them ineligible to maintain a red light camera system during that period of non-compliance;

  d. Whether Defendants' failure to conduct the 85% traffic study mandated by N.J.S.A. 39:4-8.14(a)(3) rendered them, ab initio, ineligible to maintain a red light camera systems in East Windsor during that period of non-compliance;

  e. Whether the timing of the yellow light interval at Defendant's red light camera systems met the statutory requirements of N.J.S.A. 39:4-8.14(a)(3) between September 2, 2011 and June 19, 2012;

  f. Whether Defendants' failure to comply with the mandatory inspection and certification requirements of N.J.S.A. 39:4-8.14(e) for a given period of time in the past can be retroactively cured by conducting an inspection and submitting a certification outside the six month time period mandated by N.J.S.A. 39:4-8.14(e);

  g. Whether the class is entitled to a court-supervised program of audits and refunds to relating to those $85 fines collected by Defendants during any period in which they are found to have been ineligible to maintain red light camera systems in East Windsor.

70. Plaintiff is a member of the class and sub-class he seeks to represent.

71. On June 5, 2012, Plaintiff was issued a N.J.S.A. 39:4:81 violation notice by Defendants, based on its red light camera system located at the intersection of Route 130 and Dutch Neck Road, and was charged and paid a $85 fine to Defendants based on that violation notice.

72. The claims of Plaintiff are not only typical of all class members, they are identical in that they arise from the same uniform conduct, municipal policy and statutory authority as all other class members, and his claims are based on the same legal theories of all class members.

73. Plaintiff has no interest antagonistic to, or in conflict with, the class.

74. Plaintiff will thoroughly and adequately protect the interests of the class, having retained qualified and competent legal counsel to represent himself and the class.

75. Defendants have acted and refused to act on grounds generally applicable to the class, thereby making appropriate injunctive and declaratory relief for the class as a whole.

76. The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications.

77. A class action is superior to other available methods for the fair and efficient adjudication of the controversy since, inter alia, the damages suffered by each class member were less than $100 per person and individual actions to recoup such an amount are not economically feasible.

78. Common questions will predominate, and there will be no unusual manageability issues.

## COUNT ONE

### 42 U.S.C. § 1983

79. Plaintiff incorporates all preceding paragraphs as though fully set forth at length herein.

80. The conduct by Defendants described herein deprived Plaintiff and the class of rights, privileges and immunities secured by the Constitution of the United States, including the Due Process clause of the Fourteenth Amendment of the United State Constitution.

81. Here, Plaintiff and the class were deprived of protected property and liberty interests, without due process of law, by persons acting under color of state law.

82. Specifically, the conduct complained of was committed by Defendants, acting under color of state law.

83. Defendant East Windsor is a municipality and is a person within the meaning of Section 1983.

84. At all relevant times, Defendant ATS was a contractor retained by East Windsor to perform public, governmental functions, including issuing violation notices for alleged traffic violations, to such an extent as to support a determination that ATS was acting under color of

14

state law when it performed the actions and inactions described herein.

85. The challenged conduct of Defendants was undertaken pursuant to an express policy of Defendants with regard to the issuance of tickets based on red light camera systems.

86. Under this policy, Defendants continued to issue violation notices and to impose monetary fines for such alleged infractions, at a time when Defendants were aware that they had failed to meet the mandatory statutory requirements to legally operate such red light camera systems in New Jersey. Therefore, Defendants knew they were was not legally eligible to operate such a system, or to issue violation notices based on such a system, or to collect fines for violation notices based on such a system during that period of non-compliance.

87. This policy was undertaken with deliberate indifference for the constitutional rights of Plaintiff and the class.

88. Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fourteenth Amendment.

89. The Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person has already acquired in specific benefits.

90. Property interests are not created by the Constitution.

91. Rather, they are created, and their dimensions are defined, by existing rules or understandings that stem from an independent source such as state law rules that secure certain benefits and that support claims of entitlement to those benefits.

92. In the case at bar, N.J.S.A. 39:4-8.14 is an independent source of certain benefits and property rights that support claims of entitlement to those benefits and property rights.

93. The Due Process Clause of the Fourteenth Amendment protects against governmental

15

deprivations of life, liberty, or property without due process of law.

94. The extraction of a monetary fine implicates the Due Process Clause of the Fourteenth Amendment to the United States Constitution even when only a small amount has been taken.

95. Thus, at a minimum, Plaintiff and the class have a property interest in the $85 monetary fines sought and assessed against them by Defendants, which were based on Defendants' operation of unlawful red light camera systems during the class period.

96. Accordingly, Plaintiff and the class were entitled to the constitutional protections of procedural due process in this case and were deprived of that due process by the acts and omission alleged herein.

## COUNT TWO

### UNJUST ENRICHMENT/DISGORGEMENT

97. Plaintiff incorporates all preceding paragraphs as though fully set forth at length herein.

98. By the acts alleged herein, Defendants received a benefit from Plaintiff and the class in the form of $85 fines imposed on and collected from each class member in the manner alleged herein, which were split between the two Defendants.

99. The retention of that benefit by Defendants would be unjust because the amounts were collected in a manner that violated state and federal law, as outlined herein.

100. By the facts alleged herein, equity demands that Defendants disgorge themselves of this benefit and that the benefit be returned to Plaintiff and the class.

## COUNT THREE

### NEW JERSEY CIVIL RIGHTS ACT, N.J.S.A. 10:6-1 et seq.

101. Plaintiff incorporates all preceding paragraphs as though fully set forth at length herein.

102. By the acts alleged herein, Plaintiff and the class have been deprived of substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States, and/or substantive rights, privileges or immunities secured by the Constitution or laws of New Jersey, and have had their exercise and enjoyment of those substantive rights, privileges or immunities interfered with by a person acting under color of law.

## COUNT FOUR

## INJUNCTIVE AND DECLARATORY RELIEF

103. Plaintiff incorporates all preceding paragraphs as though fully set forth at length herein.

104. Based on the conduct and facts alleged herein, Plaintiff seeks a class-wide order for injunctive and declaratory relief seeking a declaration that Defendants failed to comply with the statutory requirements of N.J.S.A. 39:4-8.14 (a)-(e) for lawfully maintaining red light camera systems in New Jersey between September 1, 2011 and the present.

105. Plaintiff also seeks an order for injunctive relief, directing that Defendants conduct an audit of their books and records to determine the persons from to whom Defendants issued red light camera tickets during the period described in in this complaint and creating a court-supervised program of refunds to the persons from whom $85 fines were collected based on the red light camera systems in East Windsor during that period.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff asks this court to:

a. Certify the proposed class as a class action pursuant to Fed.R.Civ.P. 23;

b. Enter an order for injunctive and declaratory relief as described herein;

17

   c. Enter judgment in favor of each class member for damages suffered as a result of the conduct alleged herein, to include interest and pre-judgment interest;

   d. Award Plaintiff reasonable attorneys' fees and costs;

   e. Award Plaintiff and the class actual damages;

   f. Grant such other and further legal and equitable relief as the court deems just and equitable.

## JURY DEMAND

Plaintiff hereby demands a trial by jury as to all issues so triable.

SHABEL & DeNITTIS, P.C.

By:    */S/ Joseph A. Osefchen*
       Stephen P. DeNittis (SD-0016)
       Joseph A. Osefchen
       525 Route 73 North
       5 Greentree Centre, Suite 302
       Marlton, NJ 08053
       (856) 797-9951

Dated: July 31, 2012